*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DAVID JOHN WILLIAMS,

Defendant-Appellant.

UNPUBLISHED
October 29, 2020

No. 345720
Saginaw Circuit Court
LC No. 17-043666-FH

Before: METER, P.J., and SHAPIRO and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of five counts of possessing child sexually abusive material (CSAM), MCL 750.145c(4)(a), and five counts of using a computer to commit a crime, MCL 752.796. Defendant was sentenced, as a fourth habitual offender, MCL 769.12, to concurrent sentences of 48 to 180 months' imprisonment for each possession of CSAM conviction and 114 to 240 months' imprisonment for each using a computer to commit a crime conviction. On appeal, defendant argues that there was insufficient evidence to sustain his convictions, the prosecution engaged in misconduct[1], a *Brady*[2] violation, issues at sentencing, juror misconduct, ineffective assistance of counsel, and cumulative error. We affirm.

---

[1] This Court stated in *People v Jackson*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015):

> As this Court recently noted in *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015), although the term "prosecutorial misconduct" has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' "

For clarity and consistency's sake, and because it has become a term of art, we will utilize the term "prosecutorial misconduct."

[2] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

# I. PROCEDURAL HISTORY

This case arises out of a search warrant executed at the house of Autumn Romain, defendant's fiancée, to investigate defendant's involvement in a financial crime. Several electronics were seized from the master bedroom under the search warrant, including a laptop and cellular telephone. Detective James MacDonald of the Saginaw Township Police Department forensically examined the laptop and cell phone and discovered what he believed to be CSAM. After obtaining a new search warrant relating to CSAM, Detective MacDonald found "[h]undreds upon hundreds of images of suspected [CSAM]," on the laptop. Detective MacDonald sent the Michigan State Police Computer Crime Unit the laptop and cell phone that were seized from Romain's residence, in addition to two other laptop hard drives, flash drives, and compact disks that were seized from defendant's residence.

Brian Pitt, a forensic analyst with the Michigan State Police, performed a forensic analysis of defendant's laptop. In defendant's Google Chrome Internet search history, Pitt found what he believed to be several search terms for CSAM on a pornography website, including searches for "small young," "small teen," and "petites." These searches exclusively came from the user account "Dave." Pitt found "several hundred" images of what he believed to be "child erotica" on defendant's laptop, and bookmarked 11 images that he believed were CSAM. Pitt authored a report detailing his findings and sent the report to Detective MacDonald, who concluded that the 11 images were indeed CSAM.

Detective David Vergison, a specialist with the Michigan State Police CCU, forensically analyzed defendant's cell phone. Detective Vergison searched the photographs and videos on the cell phone for CSAM. Although Detective Vergison found "an overwhelming amount of pornography," he did not find anything that he believed to be CSAM. Detective Vergison then searched the cell phone's Internet history and found a number of website URLs that contained keywords for "young" and "teen," including hotfreshteens.net and young-teen-en.ru, among other "normal internet activity." The cell phone's Internet history contained 24 websites that had been synced with the phone's Google account at 7:35:34 a.m. Detective Vergison explained that this timestamp was when the cell phone's Google account synched with data from "wherever else that Google account was signed into."[3] The timestamp that a website was synced was not necessarily the time that the website was accessed.

On March 10, 2017, Detective Andrew Longuski of the Michigan State Police interviewed defendant at the Saginaw Police Department regarding the CSAM found on defendant's laptop and cell phone. During the interview, defendant admitted that he downloaded "a lot" of pornography. Defendant explained that he would download a number of images and "review" the images at a later time. When defendant reviewed an image that appeared to be CSAM, he would delete the image. Defendant reported to Detective Longuski that he did not like CSAM. Defendant described one of the pictures that included a 10-year-old girl in "a bondage image with a ball gag

---

[3] Detective Vergison further explained that this syncing data occurs in "one of two ways . . . [when] the activity occurred on the phone and was synced with another device using the same Google account; or vice-versa, that it was used on another Google account and synced with [the cell phone]."

in her mouth." At trial, defendant contradicted Detective Longuski's testimony, explaining that the image was not something he downloaded. Instead, defendant's description of the image was an answer to Detective Longuski's question about what was the worst thing defendant had seen on the Internet. Defendant maintained that the image only popped up on his computer, and that he did not download or save the image.

Defendant testified in his defense at trial and generally asserted his innocence. Defendant admitted that he used his laptop to access adult pornography websites, where occasionally pop-up windows would open. When a pop-up would open, defendant would hit the "X" to close the window. However, other pop-ups would appear and "flood [defendant's] computer." Defendant would then power down the laptop and perform a disk cleanup. The pop-ups would focus on any number of topics, including CSAM. Although defendant did find CSAM on his laptop, he denied every specifically looking for, downloading, or saving CSAM. When defendant found CSAM on his laptop, he took the steps he believed were necessary to delete it. Despite Detective Vergison's testimony concerning downloaded CSAM, defendant's only explanation was that the CSAM must have been from the pop-ups. Additionally, defendant stated that he never entered the pornography search terms that Pitt found in the laptop's history. Instead, defendant contended that those terms must have been part of the pop-ups. Further, defendant testified that the over 800 images that were found on his computer could only come from the pop-ups because he never searched for CSAM.

As stated above, the jury found defendant guilty of five counts of possession of CSAM and five counts of using a computer to commit a crime. Defendant appealed his convictions and sentences to this Court. Defendant filed a motion to remand with this Court for a *Ginther*[4] hearing, and for an evidentiary hearing regarding a *Brady* violation and a claim of juror misconduct. This Court granted defendant's motion to remand. *People v Williams*, unpublished order of the Court of Appeals, entered December 30, 2018 (Docket No. 345720). On remand, the trial court held an evidentiary hearing on defendant's claims of ineffective assistance of counsel, the *Brady* violation, and juror misconduct, and ultimately denied all of defendant's claims.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that there was insufficient evidence to sustain his convictions of possession of CSAM and that his convictions were against the great weight of the evidence. We disagree.

## A. STANDARD OF REVIEW

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016). The reviewing Court must determine if, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the prosecution proved each essential element of the crime beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012). "All conflicts in the evidence must be resolved in favor of the prosecution and circumstantial evidence and all reasonable inferences drawn therefrom can constitute satisfactory proof of the crime." *Solloway*, 316 Mich App at 180-181

---

[4] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-3-

(citations omitted). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Flick*, 487 Mich 1, 24-25; 790 NW2d 295 (2010) (internal citation and quotation marks omitted).

To preserve a claim that a conviction is against the great weight of the evidence, the defendant must timely move the trial court for a new trial on that ground. *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Although defendant did move for a new trial, he did not move for a new trial on the basis that his convictions were against the great weight of the evidence. Accordingly, this issue is unpreserved for appeal. Generally, this Court reviews an issue concerning the great weight of the evidence by deciding whether "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Cameron*, 291 Mich App at 616-617 (quotation marks and citation omitted). "However, when a party fails to preserve a great-weight issue for appeal, an appellate court will look for plain error affecting the defendant's substantial rights." *Id*. at 617 (quotation marks and citation omitted).

## B. DISCUSSION

Defendant was convicted of possessing CSAM under MCL 750.145c(4), which provides, in pertinent part:

> A person who knowingly possesses or knowingly seeks and accesses any child sexually abusive material if that person knows, has reason to know, or should reasonably be expected to know the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child is guilty of a crime . . . .

A child is a person who is younger than 18 years of age. MCL 750.145c(1)(c). Child sexually abusive material is:

> any depiction, whether made or produced by electronic, mechanical, or other means, including a developed or undeveloped photograph, picture, film, slide, video, electronic visual image, computer diskette, computer or computer-generated image, or picture, or sound recording which is of a child or appears to include a child engaging in a listed sexual act; a book, magazine, computer, computer storage device, or other visual or print or printable medium containing such a photograph, picture, film, slide, video, electronic visual image, computer, or computer-generated image, or picture, or sound recording; or any reproduction, copy, or print of such a photograph, picture, film, slide, video, electronic visual image, book, magazine, computer, or computer-generated image, or picture, other visual or print or printable medium, or sound recording. [MCL 750.145c(1)(o).]

To knowingly possess CSAM under MCL 750.145c(4), a defendant must have "actual physical control or knowingly [have] the power and the intention at a given time to exercise dominion or control over a depiction of child sexually abusive material . . . ." *People v Flick*, 487

-4-

Mich 1, 13; 790 NW2d 295 (2010). A defendant may have actual or constructive possession of CSAM. *Id*. at 15.

At trial, defendant's main theory was that he did not possess the CSAM because the images were the product of involuntary pop-ups, meaning that he did not knowingly possess CSAM. In *Flick*, our Supreme Court addressed a similar argument, where the defendants argued that merely viewing CSAM on the Internet does not qualify as possession under MCL 750.145c(4). *Id*. at 10. The Court found the defendants' argument untenable because the defendants knowingly sought out websites containing CSAM and purchased access to the websites. *Id*. at 16. "[I]t is the many intentional affirmative steps taken by the defendant to gain actual physical control, or to knowingly have the power and the intention at a given time to exercise dominion or control over the contraband either directly or through another person or persons, that distinguishes mere viewing from knowing possession." *Id*. at 18.

At trial, Pitt testified that he forensically analyzed defendant's laptop and found hundreds of images that he suspected to be CSAM. Pitt found the images in a number of locations on the computer, including in the recycling bin, various folders, and the cache. A number of the images contained a file path that lead to the user file for "Dave." Pitt also found suspected CSAM in what he called "lost folders." Lost folders occur when a user deletes a folder that contains files: the folder itself is deleted, but the files that were located within the folder are not deleted and remain in the computer. Pitt authored a report that bookmarked 11 images of CSAM and, after reviewing the report, Detective MacDonald determined that the images were indeed CSAM. In addition to searching defendant's laptop for images, Pitt also extracted defendant's Internet search history for Google Chrome, a web browser. Pitt found what he believed to be several search terms for CSAM on a pornography website, including searches for "small young," "small teen," and "petites." These searches exclusively came from the user account "Dave." Similarly, Detective Vergison forensically analyzed defendant's cell phone and found that defendant visited several pornography websites that included "young" and "teen" in the URLs and website names. Defendant testified that he did not download the CSAM images that Pitt found on the laptop. Instead, defendant asserted that the images and search terms must have come from pop-ups.

Viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence that defendant knowingly possessed CSAM. Eleven images of CSAM were found on defendant's computer, and there was evidence that defendant intentionally searched for the CSAM. Although defendant testified that the images and search terms were the result of pop-ups, the jury ultimately determined that Detective Pitt's and Detective Vergison's testimony was more credible than defendant's testimony. "A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). On the basis of the 11 CSAM images found on defendant's laptop and testimony that defendant searched for terms that could be interpreted as searching for CSAM, the jury was able to reasonably infer that defendant downloaded the CSAM during those searches, and, thus, the jury determined that defendant knowingly possessed CSAM. Accordingly, there was sufficient evidence to sustain defendant's convictions, and, for the same reason, defendant's convictions were not against the great weight of the evidence.

### III. PROSECUTORIAL MISCONDUCT

In defendant's brief on appeal, defendant argues that the prosecutor engaged in misconduct during her closing argument by impermissibly attacking the credibility of the defense. In defendant's standard 4 brief, defendant argues that the prosecutor engaged in misconduct during her opening statement and cross-examination of defendant by making statements that were not substantiated by the evidence and by misrepresenting evidence. We disagree.

### A. STANDARD OF REVIEW

To preserve an issue of prosecutorial misconduct, a defendant must timely and specifically object, except when an objection would not cure the error, or failing to review the error would result in a miscarriage of justice. *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003) (citation omitted). Defendant must also request a curative instruction. *People v Unger (On Remand)*, 278 Mich App 210, 235; 749 NW2d 272 (2008). Defendant objected to the prosecutor's statement that it was the defense's job to confuse the jury during closing argument, and a jury instruction was given that the attorney's arguments were not evidence. Thus, defendant's arguments concerning this statement is preserved for appeal. However, defendant did not object to any statement during the prosecutor's opening statement, nor did defendant object to the prosecutor's representations of the evidence during the cross-examination of defendant or closing arguments. Thus, defendant's arguments concerning these statements are unpreserved.

A preserved claim of prosecutorial misconduct is reviewed de novo to determine if a defendant was denied a fair and impartial trial. *People v Thomas*, 260 Mich App 450, 453; 678 NW2d 631 (2004). However, unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting a defendant's substantial rights. *People v Miller*, 326 Mich App 719, 734; 929 NW2d 821 (2019).

### B. DISCUSSION

Prosecutorial misconduct issues are decided on a case-by-case basis. *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). This Court reviews "the prosecutor's statements in context to determine whether the defendant was denied a fair and impartial trial." *Id*. "A prosecutor may deny a defendant's right to a fair trial by making improper remarks that infringe a defendant's constitutional rights or by making remarks that so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Miller*, 326 Mich App at 734 (quotation marks and citation omitted; alteration in original). The prosecutor's statements "are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007). "Generally, prosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

Defendant first argues that the prosecutor engaged in misconduct by personally attacking the defense. During closing arguments, a prosecutor may not personally attack defense counsel, *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003), defense counsel's credibility, *People v Kennebrew*, 220 Mich App 601, 607; 560 NW2d 354 (1996), or suggest that

defense counsel was purposely trying to mislead the jury, *Unger*, 278 Mich App at 236. Advancing such arguments undermines the defendant's presumption of innocence, shifting the focus away from the evidence toward the defense counsel's personality. *Id.*

The relevant statements made by the prosecutor that defendant challenges are as follows:

[Defense counsel] also mentioned that there was [sic] multiple items in this case, and we are only talking about one, and we're not sure which one is from which, and which came from which laptop. But Mr. Pitt testified he forensically examined two. The one, some images were found, but it was heavily corrupted. That's not the one we're focusing on.

We're focusing on the one where hundreds of images were found, where multiple website history could've been extracted from the computer with no viruses. It's very simple in this case. The defense's job is to try to confuse you.

\* \* \*

That's his job is to try to confuse you, to try to get you to think that this was an accident, that he was unintentionally seeking these things, that he inadvertently found hundreds and hundreds of child pornographic images of them engaging in sexual acts, that he wasn't actively searching.

The prosecutor's statements occurred during her rebuttal argument. These statements were made in response to defense counsel's contentions that there were three laptops and that the prosecution did not identify which computer the CSAM came from. Further, counsel argued that defendant did not search for CSAM and that the search terms were the result of pop-ups: "So all these search terms that the prosecutor says in their closing argument, that they were intentionally put in is wrong because Mr. Pitt said it is not so."

In context, the prosecutor's statements were made during rebuttal arguments and in response to defense counsel's arguments that the search terms the prosecutor focused on were the result of pop-ups, not intentional searches. "This scope of review is important because an otherwise improper remark may not rise to an error requiring reversal when the prosecutor is responding to the defense counsel's argument." *Kennebrew*, 220 Mich App at 608. The prosecutor was replying to defense counsel's argument, that the CSAM on defendant's computer was the result of accidental pop-ups, by stating that defendant intentionally searched for CSAM. Although the statements could be seen as improper in isolation, in context, the remarks were in response to defense counsel's arguments. Therefore, there is no error requiring reversal.

Defendant next argues that the prosecution engaged in misconduct by arguing facts not in evidence and by misrepresenting the evidence. "A prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Unger*, 278 Mich App at 241. While a prosecutor may not "mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001).

Defendant first contends that, during the prosecutor's opening statement, the prosecutor argued facts that were not substantiated by evidence adduced during the trial, such as stating that defendant actively searched for CSAM on his laptop and cell phone, that there were over 800 images of CSAM on defendant's laptop, and that Romain did not have access to defendant's laptop or cell phone. At trial, Detective Vergison testified that there were no searches for, or images of, CSAM on defendant's cell phone. Pitt testified that while he found over 800 images of child erotica, only 12 of those images could be classified as CSAM. Romain testified that she had used defendant's laptop.

While the prosecutor did inaccurately represent some facts that would be adduced at trial during her opening statement, these inaccurate statements did not deny defendant a fair and impartial trial because the witnesses' testimony provided the jury with the accurate statements. Moreover, the trial court instructed the jury that the lawyers's statements and arguments were not evidence and that only the sworn testimony of the witnesses and admitted exhibits could be properly considered. Because jurors are presumed to follow their instructions, *People v Mahone*, 294 Mich App 208, 213; 816 NW2d 436 (2011), defendant has not established that he was prejudiced by the prosecutor's misstatements, and therefore, he failed to establish a claim of prosecutorial misconduct. Defendant asserts that defense counsel was ineffective for failing to object to the prosecutor's statements, but because defendant has failed to establish any prejudice from the failure to object, defendant's claim of ineffective assistance must fail. See *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001) (stating that a defendant must establish that the defense counsel's performance prejudiced the defendant to succeed on a claim of ineffective assistance of counsel).

Defendant next argues that the prosecutor engaged in misconduct during her cross-examination of defendant by misrepresenting evidence. Defendant contends that the prosecutor engaged in misconduct by asking defendant about search terms, despite prior testimony that these terms were the names of websites. Further, the prosecutor questioned defendant about searches concerning the term "teen porn," despite this term returning results for legal pornography.

"[P]rosecutors are accorded great latitude regarding their arguments, and are free to argue the evidence and all reasonable inferences from the evidence as they relate to their theory of the case." *Seals*, 285 Mich App at 22. The prosecutor's theory at trial was that defendant intentionally searched for CSAM, and the prosecutor used defendant's Internet history to support the theory. It is a reasonable inference that defendant searched for the terms that were included in the Internet history, even if the search terms were the names of the various websites. It is also reasonable to infer that a search for "teen porn" on a legal pornography website could return CSAM. Thus, defendant has failed to establish a claim of prosecutorial misconduct.

## IV. SENTENCING

Defendant argues that the trial court erred by assessing 25 points for OV 13 because defendant only committed two crimes against a person, and that trial counsel was ineffective for failing to object. In defendant's standard 4 brief, defendant argues that the trial court erred by not ordering that his sentences in this case have the same start date as his sentences in a prior case. We disagree.

## A. STANDARD OF REVIEW

A defendant preserves a scoring challenge by raising the issue at or before sentencing, in a motion for resentencing, or in a motion to remand. See *People v Kimble*, 470 Mich 305, 310-311; 684 NW2d 669 (2004). In defendant's first motion to remand, defendant argued that OV 13 was scored on the basis of inaccurate information. Defendant now advances the same argument on appeal. Thus, this issue is preserved.

The proper interpretation and application of sentencing guidelines is a legal question that this Court reviews de novo. *People v Morson*, 471 Mich 248, 255; 685 NW2d 203 (2004). "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2019) (internal citation and quotation marks omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation which an appellate court reviews de novo." *Hardy*, 494 Mich at 438.

However, defendant did not raise the issue concerning the start date of his sentences at sentencing or in his motion for remand. Thus, this issue is unpreserved. See *Kimble*, 470 Mich at 310-311. Unpreserved issues are reviewed for plain error affecting a defendant's substantial rights, and reversal is warranted only when the "plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Callon*, 256 Mich App at 329.

## B. DISCUSSION

OV 13 addresses a continuing pattern of criminal behavior. MCL 777.43(1). The trial court must assess 25 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). "For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

Defendant argues that the trial court erred because there was no evidence that defendant downloaded the CSAM on different days, which would have been different acts for purposes of OV 13. Instead, defendant asserts that all of the CSAM was the result of one search or one download, which was one act. Defendant's argument is untenable because defendant's five convictions were based on defendant's possession of CSAM, not the downloading of CSAM. Indeed, *People v Harmon*, 248 Mich App 522; 640 NW2d 31 (2001), specifically requires an assessment of 25 points on the basis of facts similarly to those in this case. In *Harmon*, the defendant was convicted of four counts of making CSAM. *Id*. at 523. The convictions arose out of the defendant's photographing two fifteen-year-old girls on two separate occasions. *Id*. at 524. The prosecution introduced four photographs, two of each girl, that were all taken on one day. *Id*. The trial court assessed 25 points for OV 13, which the defendant argued was erroneous because one of his previous convictions was a controlled substance crime, not a crime against a person. *Id*.

at 532. However, this Court did not need to address the defendant's argument because the trial court's 25-point assessment was proper because of the defendant's four convictions of making CSAM. *Id.*

Here, defendant was convicted of five counts of possession of CSAM. Even if defendant's assertion that all the CSAM was downloaded at once is true, *Harmon* nonetheless requires an assessment of 25 points because defendant was convicted of more than three crimes against a person. Thus, defendant's argument fails, and the trial court did not err by assessing 25 points for OV 13. Accordingly, trial counsel was not ineffective for failing to object to the trial court's assessment of 25 points for OV 13 because any objection would have been futile. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant next argues that the trial court erred by ordering that defendant's sentences run from the date of sentencing, August 30, 2018, instead of the date of sentencing in defendant's first prosecution, April 11, 2017. In defendant's standard 4 brief, defendant notes that he was subject to two separate prosecutions arising out of the search and seizure of his laptop from Romain's home. In the first prosecution, defendant was charged with five counts of uttering counterfeit bills, MCL 750.253, one count of possession of counterfeiting tools, MCL 750.255, and three counts of impersonating a peace officer, MCL 750.215(3). Defendant pleaded guilty to four counts of uttering counterfeit bills and one count of impersonating a peace officer, and was sentenced to concurrent prison sentences on April 11, 2017.

It is difficult to discern exactly what defendant is arguing. It appears that defendant is arguing that his sentences in this case should have started on the date of his sentences in the first case. However, defendant has provided no authority to support this argument, and thus, has abandoned this issue. See *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004) ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

## V. *BRADY* VIOLATION

Defendant argues that the prosecution committed a *Brady* violation because the frequency data report ("FDR report") was in the prosecution's possession during trial, the prosecution failed to disclose the report, and the report was exculpatory. We disagree.

### A. STANDARD OF REVIEW

Due process claims, such as allegations of a *Brady* violation, are reviewed de novo. *People v Dimambro*, 318 Mich App 204, 212; 897 NW2d 233 (2016).

### B. DISCUSSION

As an initial matter, the prosecution argues that this issue was not properly before the trial court on remand because the issue was outside the scope of this Court's remand order. However, our remand order allowed "defendant to file a motion for a new trial based on the claims of ineffective assistance of counsel and improper conduct by jurors specified in the motions to remand filed by defendant in pro per and by his appellate counsel and, in the trial court's discretion, for an evidentiary hearing. Proceedings on remand are limited to the issues raised in the motions

-10-

to remand." *People v Williams*, unpublished order of the Court of Appeals, entered December 30, 2018 (Docket No. 345720). Although not specifically identified in the order, defendant raised the issue of a possible *Brady* violation in his motion to remand. Accordingly, the trial court was permitted to consider the *Brady* issue.

"The Supreme Court of the United States held in *Brady* that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014), quoting *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). To establish a *Brady* violation, the defendant must show: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Chenault*, 495 Mich at 150.

The prosecution concedes the first element because it appears that the Saginaw Police Department was in possession of the FDR report during the time of trial. See *Dimambro*, 318 Mich App at 213 (quotation marks and citations omitted; alteration in original) ("[E]ven though due process does not generally require the prosecution to seek and find exculpatory evidence or to search for evidence that will support a defendant's case, the individual prosecutor [does have] a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."). However, the prosecution disputes that the FDR report was favorable to defendant or material.

Defendant argues that the FDR report was favorable and material because the report establishes that defendant did not perform the searches for CSAM on his cell phone that the prosecution asserted he did. The FDR report shows that there were no searches or Internet activity on defendant's cell phone between 1:38 a.m. and 9:40 a.m. on October 19, 2016. At trial, Detective Vergison testified that defendant's cell phone Internet history contained 24 websites that had been synced with the phone's Google account at 7:35:34 a.m. on October 19, 2016. Detective Vergison explained that this timestamp was when the cell phone's Google account synched with data from "wherever else that Google account was signed into," meaning that the timestamp on the cell phone's Internet history was not necessarily the time that the website was accessed. Additionally, these 24 websites were accessed from a device that was not defendant's cell phone, which explains why there are no entries in the FDR report. Because the FDR report only contains Internet activity for defendant's cell phone, and Detective Vergison explained that the searches in question occurred on a device that was not defendant's cell phone, the FDR report has no exculpatory or impeachment value. Thus, the FDR report is not favorable to defendant, and there is no *Brady* violation relative to the prosecution's failure to provide defendant with the report.

## VI. JUROR MISCONDUCT

Defendant argues that he is entitled to a new trial because of juror misconduct when the jury was exposed to extraneous information concerning defendant's prior convictions and imprisonment and Romain's working relationship with two of the jurors. We disagree.

## A. STANDARD OF REVIEW

To preserve an issue of juror misconduct, a defendant must raise the issue in a motion for a new trial or in a motion for an evidentiary hearing. *People v Benberry*, 24 Mich App 188, 191-192; 180 NW2d 391 (1970). Defendant argued that he was entitled to a new trial on the basis of jury misconduct due to extraneous information and now advances the same argument on appeal. Thus, this issue is preserved.

A trial court's decision on a motion for a new trial on the basis of juror misconduct is reviewed for an abuse of discretion. *People v Johnson*, 245 Mich App 243, 250; 631 NW2d 1 (2001). "A trial court may be said to have abused its discretion only when its decision falls outside the principled range of outcomes." *People v Blackston*, 481 Mich 451, 460; 751 NW2d 408 (2008). A trial court's findings of fact are reviewed for clear error. *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003). "A finding is clearly erroneous if, after reviewing the entire record, an appellate court is left with a definite and firm conviction that a mistake has been made." *Id*.

However, defendant did not advance a claim of juror misconduct on the basis that Romain had a working relationship with two of the jurors. Although defendant claims that he was going to bring this issue up to the trial court during the evidentiary hearing, the issue was not raised in his motion for a new trial or at the evidentiary hearing. Thus, this issue is not preserved. Unpreserved issues are reviewed for plain error affecting a defendant's substantial rights, and reversal is warranted only when the "plain error resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Callon*, 256 Mich App at 329.

## B. DISCUSSION

In a jury trial, a defendant has the right to be tried by a fair and impartial jury. *People v Budzyn*, 456 Mich 77, 88; 566 NW2d 229 (1997). "During their deliberations, jurors may only consider the evidence that is presented to them in open court." *Id*. "Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment." *Id*. In *Budzyn*, our Supreme Court laid out the test to determine whether an extraneous influence denied a defendant of a fair and impartial jury:

> In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove two points. First, the defendant must prove that the jury was exposed to extraneous influences. Second, the defendant must establish that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict. Generally, in proving this second point, the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and that there is a direct connection between the extrinsic material and the adverse verdict. If the defendant establishes this initial burden, the burden shifts to the people to demonstrate that the error was harmless beyond a reasonable doubt. We examine the error to determine if it is harmless beyond a reasonable doubt because the error is constitutional in nature.

-12-

> The people may do so by proving that either the extraneous influence was duplicative of evidence produced at trial or the evidence of guilt was overwhelming. [*Id*. at 88-90 (citations and footnotes omitted).]

"An allegation of juror misconduct, even if the alleged misconduct did actually occur, will not warrant a new trial unless the party seeking the new trial can show that the misconduct [was] such as to affect the impartiality of the jury or disqualify them from exercising the powers of reason and judgment." *People v Dunigan*, 299 Mich App 579, 586; 831 NW2d 243 (2013) (quotation marks and citation omitted; alteration in original). "[T]he mere possibility of prejudice is insufficient to warrant relief." *People v Rose*, 289 Mich App 499, 532; 808 NW2d 301 (2010).

Defendant first argues that the extraneous information of defendant's prior convictions and incarceration adversely affected the verdict because one of the jurors, DT, testified that she would have voted to acquit defendant without the extraneous information. The trial court disagreed, finding DT's testimony not credible because DT could not state whether the extraneous information or pressure from the other jurors caused her to change her vote; DT did not recall hearing that defendant had prior convictions, despite defense counsel stating such during voir dire and direct-examination of defendant; and DT could not identify which jurors found the extraneous information, or specifically what the information was, apart from vaguely stating that defendant was a conman, had been involved in some type of fraud, and was incarcerated. Defendant asserts that the trial court's findings concerning DT's credibility were clearly erroneous. A review of DT's testimony reveals that DT provided vague answers, which can be understandable considering the length of time between the jury's deliberations and the evidentiary hearing. However, DT's evasiveness and inability to articulate what made her change her vote does not leave this Court with a definite and firm conviction that the trial court erred by finding DT's testimony incredible. Moreover, "[t]his Court must give deference to the trial court's factual findings, particularly where the credibility of witnesses is involved." *Galloway*, 259 Mich App at 638.

Even if the trial court found DT's testimony credible, the trial court did not abuse its discretion by determining that the extraneous information relating to defendant was not an error requiring reversal. For the first point, that the jury must have been exposed to extraneous information, the jury learned that defendant was convicted of counterfeiting and impersonating a peace officer during voir dire and during defense counsel's direct-examination of defendant. Thus, despite DT's testimony, the jury did not first learn about this information from the unauthorized Internet search during deliberations. Further, because the jury already knew about the prior convictions, it was reasonable for the jury to assume that defendant was incarcerated for those convictions. Thus, the jury was not subjected to extraneous information.

Assuming that the jury was subjected to extraneous information, such information did not create a real and substantial probability that the information influenced the jury's verdict. The jurors were instructed that they could only consider defendant's prior convictions in deciding whether he was a truthful witness, not as substantive evidence of his guilt. Because jurors are presumed to follow their instructions, *Mahone*, 294 Mich App at 213, defendant has failed to establish that the extraneous information created a real and substantial probability that it affected the verdict.

-13-

Furthermore, any error was harmless beyond a reasonable doubt because the information was duplicative of information adduced at trial and there was sufficient evidence of defendant's guilt. Thus, the trial court did not abuse its discretion by concluding that there was no juror misconduct.

Defendant's remaining claims of juror misconduct are without merit and can be quickly addressed. Defendant claims that DT changed her vote because she felt pressure to do so from the other jurors. "Any conduct, even if misguided, that is inherent in the deliberative process is not subject to challenge or review." *People v Fletcher*, 260 Mich App 531, 540; 679 NW2d 127 (2004). Pressure to vote one way or the other is an inherent part of the deliberation process, and therefore, is not reviewable by this Court. Defendant also contends that Romain had a working relationship with two of the jurors, and submitted an affidavit by Romain that purports same. However, beyond merely stating that two of the witnesses knew Romain, defendant has not advanced any argument as to how these relationships denied defendant of a fair and impartial jury. Thus, defendant has abandoned the issue. See *Harris*, 261 Mich App at 50 ("An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue.").

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that he received ineffective assistance of counsel for many reasons. We disagree.

## A. STANDARD OF REVIEW

A preserved claim of ineffective assistance of counsel is "a mixed question of law and fact." *People v Hunter*, 493 Mich 1015; 829 NW2d 871 (2013). Appellate courts review questions of law de novo. *Id.* This Court reviews "the trial court's factual findings for clear error. Clear error exists if the reviewing court is left with a definite and firm conviction that the trial court made a mistake." *People v Armstrong*, 490 Mich 281, 289; 806 NW2d 676 (2011) (internal citations omitted).

## B. DISCUSSION

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). To succeed on a claim of ineffective assistance of counsel, "a defendant must establish that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (quotation marks and citation omitted). The question of whether counsel performed reasonably is "an objective one and requires the reviewing court to 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.' " *Id.* at 670, quoting, *Strickland v Washington*, 466 US 668, 690; 104 S Ct 2052; 80 L Ed 2d 674 (1984). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "To demonstrate prejudice, the defendant must show the existence of a reasonable

probability that, but for counsel's error, the result of the proceeding would have been different." *Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant first argues that defense counsel was ineffective for failing to interview two witnesses, Romain and Krause. Defense counsel has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Trakhtenberg*, 493 Mich at 52. To the extent that defendant claims counsel should have called Romain and Krause as witnesses at trial, the claim is analyzed under the same two-part test as all other claims of ineffective assistance. *People v Jurewicz*, ___ Mich ___; ___ NW2d ___ (2020) (Docket No. 160318); slip op at 1. At the evidentiary hearing, defense counsel testified that he attempted to interview Romain, but she refused to speak with counsel. Moreover, Romain testified at trial for the prosecution and was subject to cross-examination. Although defendant contends that he wanted Romain to testify concerning the date that defendant purchased his cell phone, Romain's affidavit does not state that she would testify to that. Counsel further testified that defendant never mentioned that he wished counsel to interview Krause; moreover, counsel was not aware of Krause until defendant's motion for a new trial. Thus, defense counsel's attempt to interview Romain and failure to interview Krause, a witness that counsel was unaware of, was not objectively unreasonable.

Defendant next argues that counsel failed to review 12 images of CSAM that were from an unrelated laptop and that counsel's failure to review the images resulted in the inadmissible images to be shown to the jury. However, counsel testified that he reviewed the images at the prosecutor's office before trial, and counsel's testimony was corroborated by Detective MacDonald, who testified that he recalled counsel reviewing the images. Additionally, although the images were discussed at trial, counsel objected to the introduction of the images before they were shown to the jury, and the trial court sustained the objection. Because defendant's assertions of ineffective assistance are not grounded in fact, they must fail.

Defendant further argues that counsel was ineffective for failing to familiarize himself with the facts of the case, which resulted in Kelly analyzing and finding CSAM on the wrong laptop. "The failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). Counsel testified that he provided Kelly with a thumb drive containing the computer data, but counsel could not recall if the thumb drive contained data from just the subject laptop or multiple laptops. However, counsel sent defendant a letter that summarized Kelly's findings after review of the thumb drive. In the letter, counsel reported that Kelly found "various reference to multiple sites including XXX small, XXX small teen, XXX petite, and XXX small young." At trial, the prosecution introduced the Internet history from the subject laptop, which contained references to the same websites mentioned in counsel's letter to defendant. Thus, it appears that Kelly examined the correct laptop, and defendant's argument fails.

Defendant also argues that defense counsel was ineffective for failing to get an expert to examine defendant's cell phone or the cell phone extraction report. "An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Thus, the defendant must overcome the strong presumption of effective trial strategy by establishing the two-part test announced in *Strickland*. See *Jurewicz*, ___ Mich at ___; slip op at 1. Assuming that defense counsel's decision

to not retain an expert to analyze the cell phone was objectively unreasonable, defendant did not suffer any prejudice. At trial, Detective Vergison testified that there was no CSAM on the cell phone. Therefore, any expert analysis of the cell phone itself would not have aided defendant, and, thus, defendant was not prejudiced.

Regarding the cell phone extraction report, defendant asserts that an expert would have discovered that the extraction report was fabricated because the report contained entries for websites that were not accessed from the cell phone. Defendant's argument again ignores Detective Vergison's testimony that the extraction report contains entries for synced data, which includes websites accessed on a different device. Thus, there is not a reasonable probability that the expert testimony that defendant proposes would have resulted in a different outcome at trial.

Defendant next argues that counsel failed to provide defendant with all the discovery materials because counsel could have printed the materials that were on the DVD and thumb drive. The DVD contained a recording of the interview between defendant and Detective Longuski. Counsel testified that there was no available transcript of the interview, so counsel watched the interview, took notes, and reviewed the notes at a meeting with defendant. Because counsel reviewed the contents of the DVD with defendant, defendant was not prejudiced by not receiving the physical DVD.

The thumb drive contained the cell phone extraction report and Internet history. Defendant claims that counsel's failure to print off the extraction report and Internet history prejudiced defendant. Defendant asserts that his review of the extraction report would have permitted him to testify regarding the activity-related discrepancy between the extraction report and the Internet history, and a review of the Internet history would have permitted him to testify that the terms were not search terms, but website titles. Defendant's contentions are without merit. Regarding the extraction report, Detective Vergison testified that the report contained entries for activity that occurred on defendant's cell phone and other devices. Because defendant's proposed testimony would have been duplicative of Detective Vergison's testimony, it is unlikely that any additional testimony by defendant would have resulted in a different outcome at trial. Regarding the Internet history, defendant's proposed testimony would again have been duplicative. At trial, defendant claimed that the CSAM was the result of pop-ups, not intentional searches. Defendant's proposed testimony that he would have highlighted that the terms in the Internet history were titles of websites, not typed search terms, is just a recitation of defendant's trial testimony, albeit in different terms. It is unlikely that defendant's proposed testimony would have resulted in a different outcome at trial.

Defendant finally argues that counsel was ineffective by failing to either suppress or clarify statements made by defendant during a polygraph examination. A review of the record establishes that counsel did clarify the statements that Detective Longuski testified that defendant said during the interview. At trial, Detective Longuski testified that defendant described one of the pornographic images he downloaded as a 10-year-old girl in "a bondage image with a ball gag in her mouth." On cross-examination, defense counsel questioned Detective Longuski about the context of defendant's answer, and whether the initial question concerned the "worst image [defendant had] seen," not what was the "worst image that [defendant] had downloaded." Further, defendant testified that Detective Longuski's question was in reference to the worst image that

defendant had seen on the Internet. Thus, defendant's claim that counsel failed to clarify defendant's statement in Detective Longuski's testimony is without factual support.

Defendant also claims that counsel should have moved to suppress defendant's statement, but does not argue how the statement prejudiced defendant. Defendant's theory at trial was that he did not search for the CSAM, rather, the CSAM on his computer was the result of pop-ups, and defendant's testimony that he did not download the image in question conforms with his theory. Because the clarification of defendant's interview response conformed with the defense theory, counsel's failure to move to suppress the response did not prejudice defendant. Moreover, defendant has not advanced a basis for a motion to suppress, nor demonstrated that a motion to suppress would have been granted. Defense counsel was not ineffective for failing to advance a meritless motion. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 50 (2000). Thus, defendant's argument is without merit.

## VIII. CONCLUSION

In sum, there was sufficient evidence to sustain defendant's convictions for possession of CSAM, and his convictions were not against the great weight of the evidence; the prosecution did not engage in misconduct; defendant's sentences were accurately scored; the prosecution did not violate *Brady*; the jury was not exposed to extraneous information; and defendant failed to establish that defense counsel rendered ineffective assistance of counsel. Because we find no errors, we need not address defendant's final issue of cumulative error because his argument merely reiterates the same issues we have already rejected.

Affirmed.

/s/ Patrick M. Meter
/s/ Douglas B. Shapiro
/s/ Michael J. Riordan